IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

DEPARTMENT OF CHILDREN AND
FAMILIES AND GUARDIAN AD LITEM,

      Appellants,

 v.

Case No.  5D23-0896
LT Case No. 2020-DP-000100-A

D.H.C. AND W.A.H., PARENTS OF
L.H., A.H., AND S.H., CHILDREN,

      Appellees.
_____/

Opinion filed May 3, 2023

Appeal from the Circuit Court
for Citrus County,
Richard A. Howard, Judge.

Rachel Batten, of Children's Legal
Services, Brooksville, for Appellant,
Department of Children and Families.

Sara Elizabeth Goldfarb, Statewide
Director of Appeals, Laura J. Lee,
Assistant Director of Appeals, and
Amanda Victoria Glass, Senior
Attorney, of Statewide Guardian ad
Litem Office, Tallahassee, for Appellant,
Statewide Guardian ad Litem Office.

1

J. Michael Blackstone, Crystal River,
for Appellees.

SOUD, J.

The Florida Department of Children and Families ("the Department"), joined by the Statewide Guardian ad Litem Office, appeals the trial court's order denying the Department's Affidavit and Verified Dependency Shelter Petition concerning the child at issue, S.H. We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b)(1)(A). We reverse and remand for entry of an Order granting the Department's shelter petition and for further proceedings consistent therewith.

I.

S.H. was born on January 31, 2023, to parents W.A.H. ("Father") and D.H.C. ("Mother") (collectively "the Parents"). At the time of S.H.'s birth, the Parents had two older children, L.H. and A.H., each of whom was placed in out-of-home care and subject of a pending dependency case. The record plainly reflects that the Parents have significant history with the Department regarding the children L.H. and A.H.

L.H. was sheltered in August 2020, at the age of six months, as a result of a spiral arm fracture to his right humerus, bruising to his abdomen, and

2

soft tissue injury to his lower lip and under his tongue.[1] The Parents denied injuring L.H. and gave an explanation as to the cause of injury medical professionals deemed implausible. L.H. was adjudged dependent in February 2021.

A.H. was sheltered in March 2021, shortly after birth. The Parents entered a consent plea regarding A.H., who was adjudged dependent in April 2021.

Both L.H. and A.H. have remained continuously in out-of-home care since each was sheltered by the Department—now more than two years ago. The Parents have not been reunified with L.H. and A.H., as the Parents have not met the conditions for their return, and the Parents are afforded only supervised visitation with them.[2] The dependency cases regarding L.H. and A.H. remain open. The Department has filed a Petition to Terminate Parental Rights as to L.H. and A.H. "given the lingering issues impacting the Parents' ability to safely care for the children."

---

[1] L.H. has profound physical and mental disabilities. L.H. is blind, non-verbal, unable to walk, and is fed through a surgically implanted G-tube. L.H. also has cerebral palsy.

[2] In November 2021, Mother filed a motion seeking reunification with L.H. and A.H. Following an evidentiary hearing, the trial court denied the motion based on, *inter alia*, concerns for the Mother's impulse control, failure to meet her therapeutic goals in counseling, and the home's roach infestation and hazardous conditions.

Once becoming aware of the birth of S.H., the Department removed S.H. from the Parents and filed a shelter petition seeking to place her in out-of-home care. The shelter petition regarding S.H. was filed during the open dependency cases of L.H. and A.H. At the conclusion of the shelter hearing, the trial court denied the shelter petition regarding S.H. In its written order denying the shelter petition regarding S.H., the trial court found:

> [T]he parents have a significant history with the Department in that the oldest child, [L.H.], was removed for a spiral arm fracture that occurred while in the immediate care and supervision of the parents. Neither parent has accepted responsibility for the child's injuries. Neither parent has met the conditions for return to the extent that either of the children would be safe upon the return to the home.

Nevertheless, the trial court concluded:

> Although this court recognizes the need for the out-of-home removal for the oldest child, [L.H.], and need for continued out-of-home care, this court does not identify imminent harm for this child, [S.H.]. Although this court has reviewed this sworn petition, to include acknowledging an understanding of Prospective Abuse, and having heard oral argument from counsel from the Department, the Guardian ad Litem Office, and for the parents, this court does not find that this child, [S.H.], is in harm's way by way of the mother and the father.

4

II.

An order denying a shelter petition is a final order, in that judicial labor ends on the matter upon denial of the Department's shelter petition. *See Dep't of Child. & Fams. v. M.C.*, 327 So. 3d 1236 n.1 (Fla. 5th DCA 2021); *see also In re B.F.*, 283 So. 3d 990, 993 (Fla. 2d DCA 2019) (quoting *M.M. v. Fla. Dep't of Child. & Fams.*, 189 So. 3d 134, 137 (Fla. 2016) ("An appeal from a final order is appropriate when judicial labor has ended.")). Thus, the trial court's denial of the Department's shelter petition regarding S.H. is reviewed *de novo*. *See In re B.F.*, 283 So. 3d at 993.

Section 39.402(1)(a), Florida Statutes (2022), provides for the placement of S.H. in shelter care prior to a hearing if "there is probable cause to believe that . . . [t]he child has been abused, neglected, or abandoned, or is suffering from or is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment." *See* § 39.402(1)(a), Fla. Stat. (2022); *see also Dep't of Child. & Fams. v. H.M.R.*, 161 So. 3d 477, 478 (Fla. 5th DCA 2014). Florida law required that S.H. be brought before the trial court for a shelter hearing within twenty-four hours. *See* § 39.402(8)(a), Fla. Stat. (2022). For S.H. to continue in shelter care following the shelter hearing, the Department "must establish [at the shelter hearing] probable cause that reasonable grounds for removal exist and that the provision of appropriate

5

and available services will not eliminate the need for placement . . . ." *See* § 39.402(8)(d)(1), Fla. Stat. (2022). "The issue of probable cause shall be determined in a nonadversarial manner, applying the standard of proof necessary for an arrest warrant."[3] Fla. R. Juv. P. 8.305(b)(3); *see also H.M.R.*, 161 So. 3d at 478.

Importantly, "abuse" is defined in Chapter 39, Florida Statutes.

> "Abuse" means any willful act or threatened act that results in any physical, mental, or sexual abuse, injury, or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired. **Abuse of a child includes the birth of a new child into a family during the course of an open dependency case when the parent or caregiver has been determined to lack the protective capacity to safely care for the children in the home and has not substantially**

---

[3] "The Florida Supreme Court has defined 'probable cause' in the context of an arrest warrant as 'a reasonable ground of suspicion supported by circumstances strong enough in themselves to warrant a cautious person in belief that the named suspect is guilty of the offense charged.'" *H.M.R.*, 161 So. 3d at 478 (citations omitted); *see also Spano v. Dep't of Child. & Fams.*, 820 So. 2d 409, 413 n.5 (Fla. 3d DCA 2002). "[P]robable cause is a 'fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.'" *H.M.R.*, 161 So. 3d at 478 (citations omitted). "It requires 'only the probability, and not a prima facie showing, of criminal activity.'" *Id.* (internal quotations omitted). In the context of a shelter hearing, "[t]he court may base its [probable cause] determination on a sworn complaint, testimony, or an affidavit and may hear all relevant and material evidence, including oral and written reports, to the extent of its probative value even though it would not be competent at an adjudicatory hearing." *Id.* at 478–79; *see also* Fla. R. Juv. P. 8.305(b)(5).

**complied with the case plan towards successful reunification *or* met the conditions for return of the children into the home**.

§ 39.01(2), Fla. Stat. (2022) (emphasis added).

Based upon the clear and plain language[4] of section 39.01(2), Florida Statutes, the open dependency cases for L.H. and A.H. establish probable cause that S.H. is "in imminent danger of illness or injury as a result of abuse . . . ." § 39.402(1)(a), Fla. Stat. (2022). Accordingly, "reasonable grounds for removal exist and . . . the provision of appropriate and available services will not eliminate the need for placement . . . ." § 39.402(8)(d)(1), Fla. Stat. (2022).

There is no dispute that S.H. was born into this family during the course of the Parents' open dependency cases involving L.H. and A.H. and that those cases remain open. These children have not been reunified with the Parents—and each child has been in out-of-home care for more than two years. Indeed, the Mother's Motion for Reunification was denied by the trial

---

[4] When interpreting statutes, Florida courts "follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'" *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). When, as here, the statute is clear on its face in its requirements, "our 'sole function' is to apply the law as we find it." *Alachua Cnty. v. Watson*, 333 So. 3d 162, 169 (Fla. 2022) (quoting *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021)).

court. Further, as recently as December 2022 the trial court granted the Department's Motion to Reinstate Supervised Visitation because of ongoing challenges. The Parents presently continue to exercise only supervised visitation.

While the Parents claim they have completed many of the case plan tasks and the Department simply refuses to return L.H. and A.H., the Parents have not "met the conditions for return of [L.H. and A.H] into the home." § 39.01(2), Fla. Stat. (2022). At the shelter hearing, it was presented to the trial court that the parents have not "outwardly demonstrated behavioral change from learning from case plan tasks . . . ." The Department argued that neither the Mother nor the Father attended recent medical appointments for L.H., that there were "recent ongoing issues regarding visitation," and that the Parents failed to seek medical help when L.H.'s G-tube was dislodged for approximately three hours, which was "life-threatening." As a result, the dependency cases for L.H. and A.H. remain open as the Department maintains that neither the Father nor the Mother have met the conditions for return of these two children.

Therefore, by the plain language of sections 39.402 and 39.01(2), Florida Statutes, S.H. was in imminent danger of illness or injury as a result

of abuse. The trial court's conclusions to the contrary—and its order denying the shelter petition regarding S.H.—were error.

## III.

The trial court reversibly erred in its denial of the Department's shelter petition regarding S.H. The Parents had an open dependency case for each of their two other children, which demonstrates ongoing troubles in their roles as parents. For purposes of the shelter petition regarding S.H., Florida law is clear that these open dependency cases establish probable cause that S.H. is in imminent danger of illness or injury resulting from abuse. Accordingly, the trial court's order denying the shelter petition is reversed. This case is remanded with instructions to grant the shelter petition regarding S.H. and for further proceedings consistent therewith.

REVERSED AND REMANDED with instructions.

It is so ordered.

WALLIS and KILBANE, JJ., concur.